UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JASON J. FALLON | : | |
| | : | |
| v. | : | C.A. No. 07-151A |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on May 2, 2007 seeking to reverse the decision of the Commissioner or, in the alternative, to remand for further proceedings. On November 13, 2007, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 8). On December 13, 2007, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 9).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on November 1, 2002, alleging disability as of June 30, 2001. (Tr. 95-97, 379-382). The applications were denied initially (Tr. 51-54, 384-387) and on reconsideration. (Tr. 56-58). Plaintiff filed a request for an administrative hearing. (Tr. 59). On May 10, 2006, a hearing was held before Administrative Law Judge Barry Best (the "ALJ") at which Plaintiff, assisted by counsel, and a vocational expert appeared and testified. (Tr. 388-405).

On May 26, 2006, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 21-30). Plaintiff appealed to the Appeals Council by filing a request for review. (Tr. 17-18). The Appeals Council denied Plaintiff's request for review on March 1, 2007. (Tr. 9-11). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's mental RFC findings are not supported by substantive evidence. Plaintiff further argues that the ALJ failed to follow proper standards for evaluating his credibility.

The Commissioner disputes Plaintiff's claims and argues that the ALJ's mental RFC assessment is supported by substantial evidence. The Commissioner also asserts that the ALJ properly found that Plaintiff's subjective symptomatic complaints were not totally credible.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was thirty-six years old at the time of the ALJ hearing, who has obtained a GED, with past work as a cashier, telemarketer, stocker and locker room attendant. (Tr. 110, 115, 392). Plaintiff alleges disability due to Hepatitis C, depression and panic attacks. (Tr. 109).

Plaintiff was seen in the Emergency Department of Memorial Hospital of Rhode Island on May 21, 2002 for chest pain. (Tr. 236). He was noted as "negative" for psychiatric symptoms, with a history of use of illicit drugs including cocaine and heroin. (Tr. 239). He reported recent use of cocaine, i.e., "Friday night." (Tr. 236).

No psychiatric symptoms were noted when Plaintiff was seen in Memorial Hospital's Emergency Department on July 1, 2002 after stepping on broken glass. (Tr. 261, 264). No depression, suicidal ideation, or hallucinations were noted on July 25, 2002 when Plaintiff was seen in the Emergency Department after an assault. (Tr. 268, 271).

Plaintiff initiated a request for outpatient treatment at East Bay Mental Health Center on December 11, 2002. (Tr. 277). Plaintiff reported "increasing symptoms of depression triggered in

part to his parents selling their home and his need to become more independent." Id. Plaintiff reported anger outbursts, poor memory, difficulty concentrating and sad mood. Id. Plaintiff further reported weekly use of heroin and cocaine since 1995. Id. He expressed an intent to remain drug-free for at least forty-five days and requested a mental status evaluation. Id.

On February 19, 2003, Plaintiff underwent a psychiatric evaluation with Dr. Frederick Guggenheim of Adams Farley Counseling Center. (Tr. 314-316). Plaintiff reported a suicide attempt at age 13, with "perhaps more than 100 bouts of depression" of one to several months since then. (Tr. 314). He reported symptoms such as overeating, insomnia, low energy, low self-esteem, poor concentration, and hopelessness, consistent with dysthymia, since his early twenties. He further reported discrete episodes of hypomania since his late twenties. Plaintiff had also had panic attacks since his mid-twenties. He stated these occurred when he went out in public, precluding attendance at Narcotics Anonymous meetings. He indicated that he was also a "major worrier." (Tr. 314). He had been treated for depression for six months in the 1990s with prescription medications without improvement. (Tr. 315).

On examination, Plaintiff was noted to be hard of hearing "from being in too many nightclubs for too long." Id. He made fair eye contact, interacted appropriately, spoke fluently at a normal rate and volume with an average vocabulary, and had organized and logical thought processes with unremarkable thought content. Id. Dr. Guggenheim assessed Plaintiff's mood as "moderately depressed," while Plaintiff rated his depression as an 8.5 on a scale of 1-10 (with 10 being worst). Id. Plaintiff rated his depression over the past summer (2002) at 6. Id. Plaintiff's affect was somewhat constricted, he was alert and oriented, he had good retention of past and recent events, and good reasoning, judgment, and insight. Id. Dr. Guggenheim diagnosed Plaintiff with

bipolar disorder type II, panic disorder with agoraphobia, generalized anxiety disorder, opioid abuse, and cocaine abuse. He rated Plaintiff's Global Assessment of Functioning ("GAF") at 58[1] and prescribed the mood stabilizer Trileptal. (Tr. 316).

Plaintiff returned to Dr. Guggenheim for a psychiatric medication review on July 25, 2003. (Tr. 317). He reported that Trileptal had caused him to develop a rash; an unknown source had started him on Prozac and Zyprexa in May, but Plaintiff never got the Prozac filled. Zyprexa made him feel "weak, in a fog, dizzy" and not good. Plaintiff rated his depression at 7. He reported one hypomanic episode, and stated he got very anxious if he left the house. Dr. Guggenheim observed that Plaintiff was dressed very sloppily and appeared to be a "sad sack," although his hygiene was adequate. Id. Plaintiff was not homicidal, suicidal, or psychotic, although his affect was very constricted and he was not emotionally expressive. Dr. Guggenheim noted that Plaintiff had not followed through on getting his blood tested and "may not be able to be very responsible for aspects of his care." Id.

On July 30, 2003, Dr. Guggenheim completed a Supplemental Questionnaire as to Residual Functional Capacity. (Tr. 318-319). In that Questionnaire, Dr. Guggenheim opined that Plaintiff would have moderate impairments in his abilities to relate to other people; understand, carry out and remember instructions; respond appropriately to supervision; and perform varied tasks, with a moderate degree of deterioration in personal habits. (Tr. 318-319). Dr. Guggenheim further opined mild limitations in the abilities to respond appropriately to coworkers and perform simple or repetitive tasks, with moderately severe limitations in the abilities to respond to customary work

[1] A GAF in the range of 5l to 60 suggests "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual 32 (4th ed. 1994).

pressures and perform complex tasks. (Tr. 319). He also assessed a moderately severe degree of constriction of interests. (Tr. 318). Dr. Guggenheim indicated that the assessed limitations had lasted or could be expected to last for twelve months or longer, and that he believed Plaintiff's impairments had been present at that level of severity for more than one year. (Tr. 319). No psychological evaluation had been obtained. Id.

Plaintiff returned to Dr. Guggenheim on August 26, 2003. (Tr. 350). Plaintiff reported that he was staying at home with his parents and spent much of his day in bed reading and watching TV. He started taking Celexa, Risperdal and Lamictal two weeks before. He reported that he was feeling "dopey from the medications." Plaintiff stated that "nothing much has changed," rating his depression at 6.5 and his anxiety at 10. Id. He was approaching six months of sobriety. Dr. Guggenheim again noted that Plaintiff was a "sad sack" though not suicidal, homicidal or psychotic, with very constricted affect and not very emotionally expressive. Id.

On October 31, 2003, Plaintiff reported to Dr. Guggenheim that his father had thrown him out of the house ten days before, and that he was living in a tent on the streets. (Tr. 351). He had continued taking his prescriptions for Celexa, Risperdal and Lamictal but felt "lethargic and dopey, his head is in a fog." Id. He felt somewhat paranoid but not frankly suicidal, with difficulty falling and staying asleep. Plaintiff rated his depression at 9 and his anxiety at 7.5. Id.

Plaintiff returned to Dr. Guggenheim on December 5, 2003, reporting that he had a relapse on cocaine upon learning that his girlfriend of ten years was pregnant. (Tr. 352). He had returned to live with his parents, had been sober for thirty days, and was "now going to more NA meetings." Plaintiff rated his depression at 6.5; Dr. Guggenheim observed that "he appears to be mildly to moderately depressed." Id.

On March 12, 2004, Plaintiff reported to Dr. Guggenheim that while he was staying with his parents, his mother was quite sick and he was staying out of the house as much as possible due to conflict with his father and was essentially homeless. (Tr. 353). Plaintiff continued to feel foggy on his medications, and rated his depression at 7. Dr. Guggenheim indicated that Plaintiff was moderately depressed and "is certainly very impaired and not making much, if any, progress." Id.

On April 23, 2004, Plaintiff returned to Dr. Guggenheim reporting that he had moved out of his parents' home and had been living in a tent in the woods in East Providence for two months. (Tr. 354). He had meet a woman in AA meetings, become "very attached," and they were living together in his tent. Plaintiff reported that he was quite depressed. Dr. Guggenheim noted that Plaintiff was moderately depressed and "is not having any adverse effects from his medications." Id.

Plaintiff returned to Dr. Guggenheim on May 28, 2004, reporting that his mother threw out his prescription for Lamictal; Plaintiff had "another stash" of the drug and had continued to take it as prescribed. (Tr. 355). Plaintiff rated his depression at 6. Dr. Guggenheim stated that Plaintiff "is not making any progress whatsoever and he has a severe Bipolar Disorder." (Tr. 355-356).

On September 3, 2004, Plaintiff reported to Dr. Guggenheim that he was still living in a tent. (Tr. 357). He had been approved for a treatment plan, CMAP, "which should come through within the next two weeks" and was continuing to take his medications faithfully. Although Plaintiff still rated his depression at 6.5, Dr. Guggenheim noted that "he actually looks more energetic, looks more physically fit, and is more engaged in our conversation than any time that I have seen him in the past...no longer looks like a sad sack, no longer dressed sloppily. He walks briskly to the office." Id.

When Plaintiff returned to Dr. Guggenheim on November 12, 2004, he reported that he and his girlfriend were now living in an abandoned building in East Providence. (Tr. 359). He rated his depression at 4.5. Dr. Guggenheim noted that he was "less depressed than any time I have seen him over the past few years....He walks at a brisk pace to the office. His affect is no longer as constricted. He appears to be only slightly anxious." Id.

On that same date, licensed clinical social worker Philip Pierce completed a Yearly Assessment Update indicating that Plaintiff was "to be commended for his willingness to remain consistently involved in outpatient services to address his mental health issues" despite his stressors. (Tr. 360). Plaintiff reported that he was attending 12-step meetings on a regular basis. Id.

On January 6, 2005, Dr. Guggenheim completed a second Supplemental Questionnaire as to mental Residual Functional Capacity. (Tr. 361-362). Dr. Guggenheim assessed moderate limitations in Plaintiff's ability to relate to other people, respond appropriately to coworkers, and perform simple tasks. Id. He further assessed moderately severe limitations in the abilities to perform complex or repetitive tasks, with moderately severe deterioration in personal habits and constriction of interests. (Tr. 361). Dr. Guggenheim further suggested severe restriction of daily activities and severe limitations in the abilities to understand, remember and carry out instructions, respond appropriately to supervision, respond to customary work pressures, and perform varied tasks. (Tr. 362). Dr. Guggenheim indicated that Plaintiff's impairments had existed at the assessed level of severity for more than two years. Id. No psychological evaluation had been performed, and Plaintiff was not experiencing any medication side effects. Id.

Dr. Guggenheim also completed an Emotional Impairment Questionnaire, indicating that Plaintiff's emotional impairment significantly limited his ability to work on a full-time, ongoing

basis. (Tr. 363). He suggested that Plaintiff's symptoms were severe, and that he could not sustain full-time, competitive employment. (Tr. 364). In a Substance Abuse Materiality Questionnaire, Dr. Guggenheim indicated that Plaintiff's depression and anxiety precluded Plaintiff from maintaining gainful employment. (Tr. 367)

Plaintiff returned to Dr. Guggenheim on January 12, 2005 reporting that he had gone to live with friends in the Berkshires through the cold weather, and had returned to his parents' home for the past three days. (Tr. 365). He indicated he had been "set up" for heroin possession by the police, and anticipated being sentenced to serve at least six months in prison. Id. Dr. Guggenheim noted that Plaintiff's affect was not as constricted as before, and he was not as depressed as before, although Plaintiff himself rated his depression at 7. (Tr. 366).

Mr. Pierce completed a Discharge Summary on March 25, 2005, indicating Plaintiff's discharge was due to re-incarceration, and rating his GAF at 55. (Tr. 373).

Plaintiff underwent a psychiatric evaluation at the Rhode Island Department of Corrections on June 24, 2005. (Tr. 374). He was subsequently prescribed psychiatric medications including Weilbutrin, Lithium and Geodon. (Tr. 375). On September 7, 2005, he was caught spitting his prescriptions in the sink. Id.

On March 19, 2003, State Disability Determination Services ("DDS") Psychologist Suzanne Diaz Killenberg reviewed Plaintiff's medical file to date and completed a Psychiatric Review Technique Form ("PRTF") with Mental Residual Functional Capacity Assessment ("MRFC"). (Tr. 282-295, 296-300). Dr. Killenberg determined that there was insufficient evidence of any severe mental impairment from June 2001, when Plaintiff claimed to have become disabled, through November, 2002. (Tr. 282). She further found evidence of a severe affective disorder (bipolar II

disorder), a severe anxiety-related disorder (agoraphobia), and a severe substance addiction disorder (heroin/cocaine abuse) from November 2002 through November 2003. (Tr. 282, 285, 287, 290). Dr. Killenberg assessed moderate restrictions in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. 292).

Dr. Killenberg's MRFC assessed moderate limitations in the abilities to understand, carry out, and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule/maintain regular attendance/be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday/week without psychologically-based interruptions/perform at a consistent pace without unreasonable rest periods; get along with coworkers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. (Tr. 297-298). She further found a marked limitation in the ability to interact appropriately with the general public. (Tr. 297). Further explaining her findings, Dr. Killenberg summarized the medical evidence and indicated that Plaintiff should be able to recall and understand simple tasks, perform simple tasks for two-hour periods over the course of an eight-hour day and interact in a limited fashion with coworkers and supervisors. (Tr. 300).

A second DDS Consultant Psychologist, Dr. J. Stephen Clifford, reviewed Plaintiff's medical file to date and completed a second PRTF and MRFC on October 6, 2003. (Tr. 330-343, 344-346.) Dr. Clifford determined that Plaintiff's affective disorder (bipolar syndrome), anxiety and substance addiction disorder were severe. (Tr. 330, 333, 335, 338). He assessed a mild limitation in activities of daily living with moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace. (Tr. 340). In his MRFC, Dr. Clifford assessed Plaintiff with

moderate limitations in the abilities to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday/week without psychologically-based symptoms at a consistent pace without unreasonable rest periods; interact appropriately with the general public, and travel in unfamiliar places or use public transportation. (Tr. 344-345). Further explaining his findings, Dr. Clifford summarized the relevant evidence and indicated that Plaintiff should be able to understand and remember simple directions and complete tasks at a "slow and plodding" work pace, and that he "should be in [a] situation where he is not exposed to crowds or large groups. (Tr. 346). He "can tolerate presence of a few co-workers and can accept reasonable supervision." Id.

**A. The ALJ Did Not Properly Evaluate Plaintiff's Mental RFC**

The ALJ concluded that Plaintiff has "hepatitis and some psychiatric issues [anxiety and depression] with a history of substance abuse that impaired but did not preclude functioning." (Tr. 28). He determined that Plaintiff had the RFC to perform light work with moderate non-exertional limitations related to Plaintiff's "psychiatric issues." (Tr. 24-25).

The ALJ made his RFC assessment in May 2006 shortly after a hearing that was held at the ACI due to Plaintiff's incarceration at the time for a six-month term. Plaintiff alleged disability as of June 30, 2001.[2] (Tr. 95-97). Plaintiff's records were reviewed by two DDS examiners, Dr. Clifford and Dr. Killenberg, in 2003. See Exs. 14F and 21F. The Commissioner argues that these "administrative assessments" provide "substantial support for the ALJ's RFC findings." (Document

[2] Plaintiff seeks both SSI and DIB. His DIB insured status expired on June 30, 2004. (Tr. 106). Thus, Plaintiff must show disability on or before that date to qualify for DIB payments. Plaintiff would, however, qualify for SSI if he established disability at any time from June 30, 2001 through the ALJ's date of decision, i.e., May 26, 2006.

No. 9 at 16). The ALJ's RFC finding is "particularly consistent" (Document No. 9 at 16) with Dr. Clifford's October 8, 2003 finding of mild to moderate psychiatric limitations. (Tr. 26, 344-346).

Plaintiff treated for several years with Dr. Guggenheim, a Psychiatrist, starting in 2003. See Exs. 18F and 22F. On July 30, 2003, Dr. Guggenheim completed a mental RFC questionnaire assessing psychiatric limitations ranging from mild to severe with most being moderate or moderately severe. (Tr. 318-319). The Commissioner contends that this 2003 opinion of Dr. Guggenheim is "facially consistent" with the ALJ's RFC assessment. (Document No. 9 at 16). To the extent it deviates, the Commissioner contends that the ALJ properly exercised his discretion to assign greater weight to the "opinions of the DDS consultant physicians [Dr. Clifford and Dr. Killenberg], who had reviewed Plaintiff's complete record, than to that of Dr. Guggenheim." (Document No. 9 at 17).

Dr. Guggenheim continued to treat Plaintiff through 2003 and 2004 and into early 2005. Plaintiff was discharged from treatment at East Bay Mental Health Center on March 25, 2005 due to a six-month term of incarceration for a drug possession conviction. (Tr. 373). Dr. Guggenheim completed a second mental RFC questionnaire on January 6, 2005 assessing Plaintiff's psychiatric limitations as now ranging from moderate to severe with most being moderately severe or severe. (Tr. 361-362).[3] In other words, Dr. Guggenheim found a worsening of Plaintiff's symptoms from 2003 to 2005. Further, Plaintiff's "yearly assessment update" of East Bay Mental Health Center noted that Plaintiff "continues to seek services to attain support for what appears to be an ever deteriorating psychosocial situation." (Tr. 360).

---

[3] Dr. Guggenheim also opined that Plaintiff's substance abuse is not a major contributing factor to his depression and anxiety. (Tr. 367). This opinion is not contradicted by other evidence of record.

The ALJ ultimately concluded that Dr. Guggenheim's conclusions as a treating psychiatrist were entitled to "limited weight" and he placed much greater weight on the 2003 reports of Dr. Clifford and Dr. Killenberg, the non-examining consultants. Plaintiff contends that the ALJ erred by failing to give greater weight to Dr. Guggenheim's opinion, or, at a minimum, failed to articulate sufficient reasons for doing so. A treating psychiatrist is generally able to provide a detailed longitudinal picture of a patient's mental impairments, and an opinion from such a source is entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d). The amount of weight to which such an opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. See 20 C.R.F. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2). "[An ALJ] may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (citing Shaw v. Sec'y of Health and Human Servs., 25 F.3d 1037 (1st Cir. 1994)).

Here, the ALJ outlined his reasons for discounting the opinion of Dr. Guggenheim. (Tr. 28). However, as discussed below, several of those reasons are either not supported by the record or not otherwise controlling. For instance, the ALJ noted that "emergency room records noted no psychiatric issues." Id. While this may be true, it should carry little weight in this case. Plaintiff's emergency room visits were related to physical not psychological issues such as stepping on broken glass (Tr. 261) and head trauma from an assault. (Tr. 269). It is not surprising that Plaintiff's

psychiatric issues are not noted in these records, as the treating physicians had no reason to go into those issues to treat Plaintiff's relatively minor physical injuries. Further, the ALJ indicated that Dr. Guggenheim's opinion was contradicted by the fact that Plaintiff "went to nightclubs." (Tr. 28). However, there is no evidence in the record that Plaintiff went to nightclubs during the relevant disability period, i.e., after June 30, 2001. The only reference was in Dr. Guggenheim's initial evaluation in which he noted Plaintiff's "hearing difficulties" "from being in too many nightclubs for too long." (Tr. 315). Dr. Guggenheim did not indicate when Plaintiff frequented nightclubs, and there is absolutely no indication in Dr. Guggenheim's records that it was current. In fact, Dr. Guggenheim's records consistently describe Plaintiff as indigent and often homeless. The ALJ also did not seek to develop this aspect of the record and did not ask Plaintiff about this point at the hearing. (Tr. 391-401). Given the incomplete state of the record, it was error for the ALJ to place any weight on this "fact."

Moreover, the ALJ reasons that Plaintiff was not as limited as Dr. Guggenheim opined because he was "resourceful" enough to live in a tent and an abandoned building. Resourcefulness is the ability to "effectively" deal with difficulties or adversity. Living in a tent (Tr. 351, 354) and an abandoned building (Tr. 359, 398) is a last resort and hardly suggests resourcefulness.

Lastly, the ALJ significantly discounted the weight given to Dr. Guggenheim's 2005 opinion without the benefit of medical expert testimony or further consultative opinion. It is undisputed that Dr. Guggenheim found Plaintiff to be more severely limited in 2005 than he did in 2003. The DDS non-examining consultants reviewed Plaintiff's records as of 2003 and based their RFC assessment thereon. They, of course, did not have the benefit of Plaintiff's treatment records for the balance of 2003 and through 2005, as well as Dr. Guggenheim's 2005 RFC assessment. Recently, the First

Circuit instructed that "a non-examining psychologist...merit[s] less prima facie credibility than treating and examining sources, and less credibility than more expert sources" such as a testifying medical expert. See Alcantara v. Astrue, 2007 WL 4328148 at *1 (1st Cir. Dec. 12, 2007) (per curiam) (ALJ improperly substituted his own judgment for medical opinion by relying on a non-examining consultant who did not have the benefit of a complete record over the treating psychiatrist's opinion). In this case, Plaintiff treated with Dr. Guggenheim for over fifteen months after Dr. Clifford reviewed Plaintiff's records and opined. (Tr. 346, 366). In fact, most of Dr. Guggenheim's treatment post-dated Dr. Clifford's records review. The ALJ, without the benefit of a medical expert's or consultant's assessment of the full record, independently reviewed the medical record and decided that Plaintiff's condition had not worsened as opined by Dr. Guggenheim.

While the ALJ's finding of non-disability may ultimately prevail, he improperly made an independent, lay determination as to Plaintiff's mental RFC. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."). The ALJ's RFC assessment is simply not based on an analysis of functional capacity by a psychologist or other expert with the benefit of a more longitudinal record. See Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); and Rivera-Figueroa v. Sec'y of Health and Human Servs., 858 F.2d 48, 52 (1st Cir. 1988) ("we question the ALJ's ability to assess claimant's physical capacity unaided even by an RFC assessment from a nonexamining doctor").

It is not generally error for an ALJ to "reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro, 198 F. Supp. 2d at 54 (citing Shaw, 25 F.3d 1037).

However, this case is unique. The ALJ relied almost exclusively on an RFC assessment by a non-examining consultant which did not consider subsequent treatment records or a treating psychiatrist opinion. A total of thirty months elapsed from the non-examining psychologist's opinion to the ALJ's decision.

Because I find Plaintiff's primary argument to be persuasive, it is unnecessary to consider Plaintiff's alternative argument for remand. For the reasons discussed above, a sentence-four remand is warranted in this case. On remand, the ALJ shall utilize a medical expert or other appropriate consultative vehicle to assess the entirety of the mental health record.

## VI. CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 9) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be GRANTED. Final judgment shall enter in favor of Plaintiff remanding this case for further administrative proceedings consistent with this decision.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 15, 2008